# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 11, 2012

## STATE OF TENNESSEE v. MARQUES SANCHEZ JOHNSON

**Appeal from the Criminal Court for Davidson County**
**No. 2010-C-2568, 2010-D-3338    Steve Dozier, Judge**

———————————

**No.  M2012-00169-CCA-R3-CD - Filed October 18, 2012**

———————————

Appellant, Marques Sanchez Johnson, was indicted by the Davidson County Grand Jury for four counts of burglary of a motor vehicle, six counts of theft of property, and one count of evading arrest in two separate cases.  Appellant pled guilty to two counts of burglary of a motor vehicle and one count of theft in each case in exchange for a total effective sentence of six years in the first case and twelve years in the second case as a Range IV, career offender, with the trial court to determine after a sentencing hearing whether the sentences would run concurrently or consecutively.  After a hearing, the trial court ordered the sentences to run consecutively, for a total effective sentence of eighteen years as a Range IV, career offender.  Appellant insists that the trial court erred by ordering consecutive sentences. After a review of the record, the briefs, and the applicable authorities, we conclude that the record supports the trial court's determination that consecutive sentences were warranted because Appellant had an extensive criminal record and was a professional criminal. Consequently, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ALAN E. GLENN, JJ., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Marques Sanchez Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson, District Attorney General, and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Factual Background*

In September of 2010, the Davidson County Grand Jury indicted Appellant for two counts of burglary of a motor vehicle, two counts of theft of property, and one count of evading arrest in Case No. 2010-C-2568. In November of 2010, Appellant was indicted for two counts of burglary of a motor vehicle and four counts of theft of property in Case No. 2010-D-3338.

In October of 2011, Appellant pled guilty to two counts of burglary of a motor vehicle and one count of theft of property in Case No. 2010-C-2568. The remaining counts were dismissed. In exchange for the guilty pleas, Appellant received a sentence of six years as a Range IV, career offender on each count. The sentences were ordered to be served concurrently to each other.

Appellant also pled guilty to two counts of burglary of a motor vehicle and one count of theft of property in Case No. 2010-D-3338. The remaining counts of the indictment were dismissed. In exchange for the guilty pleas in this case, Appellant received sentences of six years for the burglary convictions and twelve years for the theft of property conviction, again as a Range IV, career offender.

At the guilty plea hearing, the State stated that had the case gone to trial, the State would have proven:

[I]n 2010-C-2568 [the proof] would have been that on July 8th, 2010, officers stopped [Appellant] - - I am sorry, officers observed [Appellant] enter into a black pickup truck owned by John Page and his father, another individual that I can't read the name of, that was parked at Nashville Shores in Davidson County. [Appellant] walked away and then quickly entered a white pickup truck belonging to Donald Olson.

Officers approached [Appellant] and attempted to take him into custody, he fled on foot and jumped into Percy Priest Lake in an attempt to allude capture despite repeated orders to stop. He was rescued by officers in a commandeered boat and was surrendered. He was then taken into custody, he was read his Miranda Rights, which he waived. When he was questioned, he stated that he was just trying to make some money. He further stated that he - - that he had seen the items that he had stole[n] on the seat and that he had used a crowbar to make entry.

The owners of the vehicles, Donald Olson and John Page, were able to identify the property recovered from [Appellant]. [Appellant] was interviewed again at Hermitage precinct and admitted to additional thefts at that time. The total value of items taken from the black pickup truck was $769 and from the white pickup truck was $250.

In 2010-D-3338 had that case gone to trial, the State's proof would have shown that on July 4th, 2010 at approximately 6:54 in the evening Officer Ted Whorly responded to a call at 4001 Bell Road. When he arrived at the location, he met with the victims who advised that their vehicle had been broken into and the dash was severely damaged when someone attempted to remove the radio.

The radio was stolen along with a Coach purse belonging to Lisa Campbell, an Ipod phone, an Ipod Nano belonging to Lisa Campbell, and a laptop computer. The laptop was the property of the US Department of Defense. The total value of the property was $4,549 and the damage to the dash of the vehicle was over $500.

After [Appellant] was arrested at Nashville Shores in the previously announced indictment, he was transported to Hermitage precinct where he was interviewed . . . . At that time, after being advised of his rights again, he agreed to being interviewed and admitted to breaking into that vehicle on July 4th, 2010. He admitted taking the laptop and admitted who he sold it to. The computer from that case was recovered in a separate incident in addition to a number of other items.

Further the proof would show that on July 4th, 2010 at approximately 7 p.m., Officer Kimberly Rexford responded to a call at 4001 Bell Road, when the officer arrived, she met with the victim, Louise Evervill, who advised that he had parked his 2003 Suburban at that location at approximately 10:30 that morning.

The victim returned to his vehicle at about 7 p.m. finding that someone had broken into the vehicle by forcing a tool into the lock on the passenger side door. The victim's Alpine Digital screen Dash Radio valued at approximately $500 was missing and there was damage to the dashboard and the door handle.

Four prints were lifted from the passenger side door by the officer. After [Appellant] was taken into custody at Nashville Shores for that incident, Detective - - when [Appellant] was interviewed at the Hermitage [precinct], the [Appellant] told officers that on July 4th he broke into two vehicles, one being a silver car and one being a truck and he took the car stereos out of both vehicles. He also told detectives that he sold the victims' property to another male. And based on the investigation, the officers note that [Appellant] had no authority to be in either vehicle.

The trial court found a factual basis for the plea. After the guilty plea hearing the trial court held a separate sentencing hearing because, as part of the negotiated plea agreement, the trial court was to determine whether the sentences in the two cases would run concurrently or consecutively.

At the sentencing hearing, the trial court heard testimony from Appellant's aunt, Gwendolyn Lashell Stewart. She spoke fondly of Appellant but acknowledged that she recalled him first getting into trouble at around the age of ten. She noted that he had a very lengthy criminal history as both a juvenile and an adult. Ms. Stewart agreed that Appellant primarily supported himself through crimes of theft.

Angela Jones, Appellant's mother, testified at the hearing. She stated that Appellant lived with her for quite a while and was eager to help out his brothers and sisters. Appellant even helped her get medication when insurance would not pay for it. Ms. Jones acknowledged on cross-examination that Appellant had trouble as a juvenile, being placed by the State in Richland Village, Woodland Hills, Wilder Youth Center, and Taft Youth Development Center. She recalled that Appellant had been incarcerated several times as an adult but explained that Appellant supported himself and his family in part by crimes of theft.

The trial court ultimately ordered the sentences in the two cases to run consecutively to each other, finding:

Based upon the record and the proof presented at the sentencing hearing, the Court finds that [Appellant] does have an extensive record of criminal activity and is a professional criminal who has continually committed criminal acts as a major source of livelihood. *See* [T.C.A.] § 40-35-115. Furthermore, consecutive sentencing is necessary given the severity of the offenses committed and in order to protect the public from further criminal acts committed by [Appellant]. *See State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995). For the foregoing reasons, the Court orders the six (6) year sentence in 2010-C-2569 to run consecutively to the twelve (12) year sentence in 2010-D-

-4-

3338 for an effective eighteen (18) year sentence at sixty percent (60%) to serve.

*Analysis*

On appeal, Appellant argues that the trial court improperly ordered consecutive sentencing. Specifically, he insists that he committed nonviolent crimes motivated in part by his desire to provide for his family and that his effective sentence is grossly disproportionate to the crimes that he committed. The State disagrees, countering that the record supports the imposition of consecutive sentences.

*Consecutive Sentences*

Under Tennessee Code Annotated section 40-35-115(a), if a defendant is convicted of more than one offense, the trial court shall order the sentences to run either consecutively or concurrently. A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high; . . . .

T.C.A. § 40-35-115(b). When imposing a consecutive sentence, a trial court should also consider general sentencing principles, which include whether or not the length of a sentence is justly deserved in relation to the seriousness of the offense. *See State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). The imposition of consecutive sentencing is in the discretion of the trial court. *See State v. Adams*, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997).

As stated above, this section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that "the defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(4). However, before ordering the defendant to serve consecutive sentences on the basis that he is a dangerous offender, the trial court must find that the resulting sentence is reasonably related to the severity of the crimes, necessary to protect the public against further criminal conduct, and in accord with the general sentencing principles. *See Imfeld,* 70 S.W.3d at 708-09; *State v. Wilkerson*, 905 S.W.2d 933, 938-39 (Tenn. 1995).

With regard to consecutive sentencing, the trial court commented that Appellant's prior record was "extensive" and the court concluded that Appellant was a "professional criminal who has continually committed criminal acts as a major source of livelihood." In our review, the record shows that Appellant unquestionably has an extensive criminal record. His convictions include twelve convictions for driving on a suspended or revoked license, two convictions for violating the driver's license law, two convictions for reckless driving, one conviction for facilitation of theft, one conviction for theft of property under $500, eight convictions for theft of property over $1,000, one conviction for auto burglary, one conviction for resisting arrest, three convictions for criminal impersonation, two convictions for criminal trespass, two convictions for vandalism, one conviction for disorderly conduct, one conviction for a weapons violation, two convictions for casual exchange, and eight probation violations. The presentence report also listed at least forty additional offenses that were charged but ultimately retired, nolle prossed, or dismissed. These convictions do not even include Appellant's juvenile record. We conclude that Appellant's criminal history alone is sufficient to support the imposition of consecutive sentences pursuant to Tennessee Code Annotated section 40-35-115(b)(2). *See also State v. Merl Wayne Medley*, No. W2008-00831-CCA-R3-CD, 2009 WL 4263671, at *18 (Tenn. Crim. App., at Jackson, Nov. 30, 2009), *perm. app. denied*, (Tenn. Apr. 14, 2010). However, the trial court also based its decision on the fact that Appellant was a professional criminal who has knowingly devoted his life to criminal acts as a major source of livelihood. Indeed, there was testimony in the record that Appellant committed the thefts in part to provide for himself and his family. The trial court's conclusion on this point is also supported by the record. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.


_____
JERRY L. SMITH, JUDGE